FILED
02-08-2022
Clerk of Circuit Court
Brown County, WI
2022CV000157
Honorable Donald R. Zuidmulder
Branch 1

STATE OF WISCONSIN          CIRCUIT COURT          BROWN COUNTY
_____

THE ESTATE OF NORBERT MARKS,
by CATHY DELVEAUX, Special Administrator,
and CATHY J. DELVEAUX, Individually,
8827 Schroeder Road,
Oconto Falls, Wisconsin 54154,

                                       CASE NO.:

CHERYL MARKS MURPHY              Personal Injury - Other – 30107
40 Sutton Place
Rochester, New York 14620,

        Plaintiffs,

NETWORK HEALTH INSURANCE CORPORATION
c/o KATHRYN A. FINERTY, its Registered Agent
1570 Midway Place
Menasha, Wisconsin 54952,

        Involuntary Plaintiffs,

vs.

COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC.
d/b/a COUNTRY VILLA ASSISTED LIVING PULASKI,
COUNTRY VILLA ASSISTED LIVING LLC and/or
COUNTRY VILLA ASSISTED LIVING,
c/o CHAD READER, its Registered Agent,
W2015 Industrial Drive,
Freedom, Wisconsin 54130-7517,

ABC 1-5 INSURANCE COMPANIES
As-of-yet unidentified insurance corporations,

COUNTRY VILLA ASSISTED LIVING, INC.
d/b/a COUNTRY VILLA ASSISTED LIVING PULASKI,
COUNTRY VILLA ASSISTED LIVING LLC and/or
COUNTRY VILLA ASSISTED LIVING,
c/o CHAD READER, its Registered Agent,
W2015 Industrial Drive,
Freedom, Wisconsin 54130-7517,

and

DEF 1-5 INSURANCE COMPANIES
As-of-yet unidentified insurance corporations,

      Defendants.
_____

## SUMMONS
_____

THE STATE OF WISCONSIN

TO EACH PERSON AND/OR PARTY NAMED ABOVE AS A DEFENDANT:

You are hereby notified that the Plaintiffs named above have filed a lawsuit or other legal action against you. The Complaint, which is attached hereto, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this Summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the Court, whose address is Brown County Courthouse, 100 S. Jefferson Street, Green Bay, Wisconsin 54301 and to Pitman, Kalkhoff, Sicula & Dentice, S.C., attorneys for Plaintiffs, whose address is 1110 North Old World Third Street, Suite 320, Milwaukee, WI 53203. You may have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint.

A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated at Milwaukee, Wisconsin this 8th day of February 2022.

> PITMAN, KALKHOFF, SICULA & DENTICE, S.C.
> Attorneys for Plaintiffs
> Electronically signed by:
>
> Katherine E. Metzger
> State Bar No.: 1099836
> kate@pksd.com

OFFICE ADDRESS:
1110 N. Old World Third Street
Suite 320
Milwaukee, WI  53203
(414) 333-3333

**FILED**
**02-08-2022**
**Clerk of Circuit Court**
**Brown County, WI**
**2022CV000157**
**Honorable Donald R.**
**Zuidmulder**
**Branch 1**

STATE OF WISCONSIN        CIRCUIT COURT        BROWN COUNTY

_____

THE ESTATE OF NORBERT MARKS,
by CATHY DELVEAUX, Special Administrator,
and CATHY J. DELVEAUX, Individually,
8827 Schroeder Road,
Oconto Falls, Wisconsin 54154,

CHERYL MARKS MURPHY
40 Sutton Place
Rochester, New York 14620,

      Plaintiffs,

NETWORK HEALTH INSURANCE CORPORATION
c/o KATHRYN A. FINERTY, its Registered Agent
1570 Midway Place
Menasha, Wisconsin 54952,

      Involuntary Plaintiffs,

vs.

COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC.
d/b/a COUNTRY VILLA ASSISTED LIVING PULASKI,
COUNTRY VILLA ASSISTED LIVING LLC and/or
COUNTRY VILLA ASSISTED LIVING,
c/o CHAD READER, its Registered Agent,
W2015 Industrial Drive,
Freedom, Wisconsin 54130-7517,

ABC 1-5 INSURANCE COMPANIES
As-of-yet unidentified insurance corporations,

COUNTRY VILLA ASSISTED LIVING, INC.
d/b/a COUNTRY VILLA ASSISTED LIVING PULASKI,
COUNTRY VILLA ASSISTED LIVING LLC and/or
COUNTRY VILLA ASSISTED LIVING,
c/o CHAD READER, its Registered Agent,
W2015 Industrial Drive,
Freedom, Wisconsin 54130-7517,

and

CASE NO.:
Personal Injury - Other – 30107

1

DEF 1-5 INSURANCE COMPANIES
As-of-yet unidentified insurance corporations,

       Defendants.
_____

## COMPLAINT
_____

       Plaintiffs, THE ESTATE OF NORBERT MARKS, by CATHY DELVEAUX, Special Administrator, CATHY DELVEAUX, individually, and CHERYL MARKS MURPHY, by their attorneys, Pitman, Kalkhoff, Sicula & Dentice, S.C., allege:

       1.    NORBERT MARKS (hereinafter "NORBERT") was a resident of COUNTRY VILLA ASSISTED LIVING PULASKI, located at 830 Crest Drive, Pulaski, Wisconsin 54162 from on or around June 7, 2019 through May 3, 2020.

       2.    NORBERT was born on January 17, 1931 and died on May 15, 2020; he was 89 years old at the time of his death.

       3.    CATHY DELVEAUX (hereinafter "CATHY") is an adult resident of the State of Wisconsin, currently residing at 8827 Schroeder Road, Oconto Falls, Wisconsin 54154. She is the daughter of NORBERT. CATHY was appointed Special Administrator of THE ESTATE OF NORBERT MARKS on July 30, 2020 (Oconto County Case Number 2020PR000015). A copy of the Order for Special Administration and Letters of Special Administration are attached hereto as Exhibit 1.

       4.    CHERYL MARKS MURPHY (hereinafter "CHERYL") is an adult resident of the State of New York, currently residing at 40 Sutton Place, Rochester, New York 14620. She is the daughter of NORBERT.

       5.    THE ESTATE OF NORBERT MARKS, CATHY, and CHERYL are hereinafter referred to as "PLAINTIFFS."

2

6.      Upon information and belief, Involuntary Plaintiff, NETWORK HEALTH INSURANCE CORPORATION, c/o its registered agent, KATHRYN A. FINERTY, located at Network Health Insurance Corporation, 1570 Midway Place, Menasha, Wisconsin 54952, may have paid health claims on behalf of NORBERT for medical care and services rendered as a result of the incidents that are the subject of this case. Upon further information and belief, NETWORK HEALTH INSURANCE CORPORATION may be entitled to reimbursement for related, paid claims if PLAINTIFFS recover through settlement or judgment. PLAINTIFFS allege that there may be insufficient funds from which to honor any alleged subrogation claim of NETWORK HEALTH INSURANCE CORPORATION, if in fact said claim is valid and/or applicable, and that the interest of NETWORK HEALTH INSURANCE CORPORATION is subordinate to the interest of the PLAINTIFFS.  Further, PLAINTIFFS seek to extinguish any alleged subrogation claim of NETWORK HEALTH INSURANCE CORPORATION.

7.      Upon information and belief, Defendant COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC., doing business as COUNTRY VILLA ASSISTED LIVING PULASKI, COUNTRY VILLA ASSISTED LIVING LLC and/or COUNTRY VILLA ASSISTED LIVING, (hereinafter, "COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC.") is/was a domestic business with its principal office and offices of its registered agent, CHAD READER, located at W2015 Industrial Drive, Freedom, Wisconsin 54130-7517. Upon further information and belief, at all times material hereto, COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. did/does substantial and not isolated business in the State of Wisconsin. Upon information and belief, COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. is/was in the business of licensing, owning, operating, and/or

3

managing senior living and/or long-term care communities, assisted living facilities, and/or related health care facilities, programs, and/or services including, but not limited to, community based residential facilities. Upon further information and belief, at all times material hereto, COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. owned, operated, supervised, funded, managed, administered, was the licensee for, and/or did business as COUNTRY VILLA ASSISTED LIVING PULASKI, located at 830 Crest Drive, Pulaski, Wisconsin 54162, COUNTRY VILLA ASSISTED LIVING LLC, and/or COUNTRY VILLA ASSISTED LIVING. Upon information and belief, at all times material hereto, COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. and/or their employees, representatives, consultants, agents, ostensible agents, and/or servants provided NORBERT with care, treatment, and/or services at the community based residential facility located at 830 Crest Drive, Pulaski, Wisconsin 54162. Upon further information and belief, COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC.'S behalf. Further, COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. is vicariously liable for the negligent acts of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those who COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. controlled or had the right and/or power to control, including contractors.

8.     Upon information and belief, COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. is not only individually liable for the claims detailed herein, but is also liable on the theory of corporate relationship to, control of, direct participant liability

4

and/or successor liability for, including but not limited to COUNTRY VILLA ASSISTED LIVING, INC. d/b/a COUNTRY VILLA ASSISTED LIVING PULASKI, COUNTRY VILLA ASSISTED LIVING LLC and/or COUNTRY VILLA ASSISTED LIVING. Upon further information and belief, COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to COUNTRY VILLA ASSISTED LIVING, INC. d/b/a COUNTRY VILLA ASSISTED LIVING PULASKI, COUNTRY VILLA ASSISTED LIVING LLC and/or COUNTRY VILLA ASSISTED LIVING. Upon information and belief, at all times relevant to the incidents that are the subject of this case, COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. is liable for the negligence, actions, and/or omissions of COUNTRY VILLA ASSISTED LIVING, INC. d/b/a COUNTRY VILLA ASSISTED LIVING PULASKI, COUNTRY VILLA ASSISTED LIVING LLC and/or COUNTRY VILLA ASSISTED LIVING and for the injuries and damages caused by agents of COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. under the doctrine of ostensible authority.

9.    Upon information and belief, at all times material hereto, Defendants ABC 1-5 INSURANCE COMPANIES (hereinafter "ABC 1-5") are insurance corporations doing substantial and not isolated business in Wisconsin that delivered policies of insurance in the State of Wisconsin to COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. and are the liability insurers of COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. against liability claims, including those detailed herein. By virtue of the terms and conditions of the policies of insurance and the statutes of the State of Wisconsin, ABC 1-5 are directly liable to PLAINTIFFS. The identity of ABC 1-5 is

5

unknown and, therefore, PLAINTIFFS are identifying said Defendants by fictitious name pursuant to the provisions of Wis. Stat. § 807.12.

10.     Upon information and belief, Defendant COUNTRY VILLA ASSISTED LIVING, INC., doing business as COUNTRY VILLA ASSISTED LIVING PULASKI, COUNTRY VILLA ASSISTED LIVING LLC and/or COUNTRY VILLA ASSISTED LIVING, (hereinafter, "COUNTRY VILLA ASSISTED LIVING, INC.") is/was a domestic business with its principal office located at N3782 Country Villa Way, Freedom, Wisconsin 54913 and offices of its registered agent, CHAD READER, located at W2015 Industrial Drive, Freedom, Wisconsin 54130-7517. Upon further information and belief, at all times material hereto, COUNTRY VILLA ASSISTED LIVING, INC. did/does substantial and not isolated business in the State of Wisconsin. Upon information and belief, COUNTRY VILLA ASSISTED LIVING, INC. is/was in the business of licensing owning, operating, and/or managing senior living and/or long-term care communities, assisted living facilities, and/or related health care facilities, programs, and/or services including, but not limited to, community based residential facilities. Upon further information and belief, at all times material hereto, COUNTRY VILLA ASSISTED LIVING, INC. owned, operated, supervised, funded, managed, administered, was the licensee for, and/or did business as COUNTRY VILLA ASSISTED LIVING PULASKI, located at 830 Crest Drive, Pulaski, Wisconsin 54162, COUNTRY VILLA ASSISTED LIVING LLC, and/or COUNTRY VILLA ASSISTED LIVING. Upon information and belief, at all times material hereto, COUNTRY VILLA ASSISTED LIVING, INC. and/or their employees, representatives, consultants, agents, ostensible agents, and/or servants provided NORBERT with care, treatment, and/or services at the community based

residential facility located at 830 Crest Drive, Pulaski, Wisconsin 54162. Upon further information and belief, COUNTRY VILLA ASSISTED LIVING, INC. is directly liable for its own negligent acts, as well as the negligent acts of its officers and/or directors acting on COUNTRY VILLA ASSISTED LIVING, INC.'S behalf. Further, COUNTRY VILLA ASSISTED LIVING, INC. is vicariously liable for the negligent acts of its employees, representatives, consultants, agents, ostensible agents, and/or servants and those who COUNTRY VILLA ASSISTED LIVING, INC. controlled or had the right and/or power to control, including contractors.

11.    Upon information and belief, COUNTRY VILLA ASSISTED LIVING, INC. is not only individually liable for the claims detailed herein but is also liable on the theory of corporate relationship to, control of, direct participant liability and/or successor liability for, including but not limited to COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. Upon further information and belief, COUNTRY VILLA ASSISTED LIVING, INC. is liable on the theory of its ostensible authority of, and/or its ostensible agency with, including but not limited to COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. Upon information and belief, at all times relevant to the incidents that are the subject of this case, COUNTRY VILLA ASSISTED LIVING, INC. is liable for the negligence, actions, and/or omissions of COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. and for the injuries and damages caused by agents of COUNTRY VILLA ASSISTED LIVING, INC. under the doctrine of ostensible authority.

12.    Upon information and belief, at all times material hereto, Defendants DEF 1-5 INSURANCE COMPANIES (hereinafter "DEF 1-5") are insurance corporations doing substantial and not isolated business in Wisconsin that delivered policies of

7

insurance in the State of Wisconsin to COUNTRY VILLA ASSISTED LIVING, INC. and are the liability insurers of COUNTRY VILLA ASSISTED LIVING, INC. against liability claims, including those detailed herein. By virtue of the terms and conditions of the policies of insurance and the statutes of the State of Wisconsin, DEF 1-5 are directly liable to PLAINTIFFS. The identity of DEF 1-5 is unknown and, therefore, PLAINTIFFS are identifying said Defendants by fictitious name pursuant to the provisions of Wis. Stat. § 807.12.

## **GENERAL ALLEGATIONS**

13.     PLAINTIFFS reallege and incorporate herein paragraphs 1 through 12, above.

14.     COUNTRY VILLA ASSISTED LIVING PULASKI, located at 830 Crest Drive, Pulaski, Wisconsin 54162, was, at all times relevant to the incidents that are the subject of this case, a community based residential facility within the meaning of Wisconsin statutes, regulations, and codes.

15.     At all times material, COUNTRY VILLA ASSISTED LIVING PULASKI, located at 830 Crest Drive, Pulaski, Wisconsin 54162, was subject to state law, licensing and regulatory statutes, administrative codes, and rules applicable to community based residential facilities.

16.     COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC. and/or COUNTRY VILLA ASSISTED LIVING, INC. owned, operated, supervised, funded, managed, administered, was the licensee for, and/or did business the community based residential facility known as COUNTRY VILLA ASSISTED LIVING PULASKI,

8

(hereinafter, "COUNTRY VILLA PULASKI"), located at 830 Crest Drive, Pulaski, Wisconsin 54162, prior to, during, and/or after the period of NORBERT'S residency.

17.     COUNTRY VILLA ASSISTED LIVING IN PULASKI, INC., ABC 1-5, COUNTRY VILLA ASSISTED LIVING, INC., and/or DEF 1-5, are referred to herein as "DEFENDANTS".

18.     DEFENDANTS held themselves out as a specialist in the operation and management of community based residential facilities (CBRF) serving ambulatory, semi ambulatory and/or non-ambulatory residents with advanced age, emotional disturbances, mental illnesses, irreversible dementia/Alzheimer's, physically disabilities, and/or terminal illnesses, with the expertise necessary to provide prompt, necessary and adequate care, treatment and assistance, and a safe environment, including but not limited to, maintaining the health and safety of its residents.

19.     Upon information and belief, NORBERT became a resident of COUNTRY VILLA ASSISTED LIVING PULASKI on or about June 7, 2019 and remained resident of COUNTRY VILLA ASSISTED LIVING PULASKI through on or about May 3, 2020.

20.     At all times material, DEFENDANTS violated numerous regulations, requirements, laws, rights, standards of care and/or industry standards, causing NORBERT personal injuries, medical conditions, harm, and/or wrongful death.

21.     At all times NORBERT was a resident of COUNTRY VILLA PULASKI, DEFENDANTS had a duty and promised to provide NORBERT with a prompt, adequate, and appropriate individualized treatment, assistance, care, and services, including but not limited to, supervision, monitoring, assessment, infection and/or injury prevention, nourishment, and treatment with courtesy, dignity and respect by

9

DEFENDANTS and/or its employees, representatives, consultants, agents, ostensible agents, officers, and/or servants.

22.     At all times material, DEFENDANTS had a duty to and agreed to provide treatment, assistance, care, and related services to NORBERT to attain and maintain his highest physical, mental, and psychosocial well-being, level of function and safety.

23.     At all times material, DEFENDANTS accepted the duty and responsibility for the safety and supervision of NORBERT and stood in a special relationship with NORBERT for the purposes of his protection.

24.     At all times material, the special relationship between NORBERT and DEFENDANTS gave rise to a duty of reasonable care owed to NORBERT and other CBRF residents, to protect them from all foreseeable harm.

25.     Upon information and belief, at all times material, NORBERT was unable to independently ensure his own health and safety and required supervision, monitoring, and assistance from DEFENDANTS' staff.

26.     At all times material, DEFENDANTS, and/or its employees, representatives, consultants, agents, ostensible agents, officers, and/or servants, had a duty to develop, update, implement, and comply with comprehensive Individual Service Plan (ISP) and/or Plan of Care to meet NORBERT'S needs, to assess and/or address NORBERT'S needs, risks, and/or changes in condition, to assess and evaluate DEFENDANTS continued ability to meet NORBERT'S needs, and/or to provide NORBERT with prompt and/or adequate treatment, assistance, care, and/or related services consistent with Federal, State, and/or local public health laws, regulations, codes, rules, guidance, and/or recommendations, current industry standards, and/or

within the accepted standards of care of long term care facilities, assisted living facilities and/or community-based residential facilities.

27.     At all times material, DEFENDANTS did not properly assess and/or address NORBERT'S needs, risks, and/or changes in condition, develop, update, implement, and/or comply with comprehensive ISP and/or Plan of Care to meet NORBERT'S needs, provide and/or maintain a safe, comfortable, and/or protective environment for NORBERT, protect and/or promote NORBERT'S safety, safeguard NORBERT from harm and/or environmental hazards to which he was likely be exposed, including conditions that are hazardous to anyone and/or conditions that were hazardous to NORBERT because of NORBERT'S conditions or disabilities, ensure the residents of COUNTRY VILLA PULASKI, including NORBERT, received adequate and appropriate care within the capacity of the facility, and/or develop, implement, and/or arrange for appropriate and/or necessary assessments, assistance, supervision, monitoring, interventions, personal care services, health services, treatments, care, services, staffing levels, personal protective equipment (PPE), social distancing, engineering and/or administrative controls, Emergency Plans, Infection Control Programs, COVID-19 emergency, preparedness, response, and/or control plans, and/or other related infection, administrative, emergency, safety, environmental, personnel, staffing, orientation, and/or training, resident care and/or service plans, policies, procedures, protocols, and/or guidelines to prevent the development and/or transmission of COVID-19, communicable disease and/or infection during the novel Coronavirus (COVID-19) outbreak, to address NORBERT'S needs, risks, changes in condition, and/or threats related to COVID-19, to reduce NORBERT'S risks for harm,

11

injuries, communicable disease, infection, COVID-19, and/or COVID-19 related injuries and/or medical conditions, and/or prevent NORBERT from harm, injuries, communicable disease, infection, COVID-19, and/or COVID-19 related injuries and/or medical conditions while he was a resident of COUNTRY VILLA PULASKI.

28.    Upon information and belief, on or around March 12, 2020, Governor Tony Evers signed Executive Order #72 in response to the COVID-19 coronavirus pandemic, that declared that a state of emergency relating to public health existing in the State of Wisconsin resulting from the spread of a novel coronavirus, COVID-19, and designated The Department of Health Services (DHS) as the lead agency to respond to this emergency.

29.    Upon information and belief, on or around March 13, 2020 and March 20, 2020, the State of Wisconsin DHS issued memos providing guidance, information, recommendations, reasonable efforts and/or actions, and/or resources to all Long-Term Care Facilities (LTCFs), Assisted Living Facilities (ALFs), including COUNTRY VILLA PULASKI, and/or Facilities Serving People with Developmental Disabilities in Wisconsin, to help them improve their infection prevention and control practices in order to prevent the transmission of COVID-19, protect the most vulnerable Wisconsin residents from serious harm, and/or prevent introduction and/or spread of this infectious disease into residential care facilities serving older and/or medically vulnerable adults, who have a significantly increased risk of severe illness and death from COVID-19.

30.    Upon information and belief, on or around March 13, 2020 and/or March 20, 2020, the State of Wisconsin DHS issued memos recommending that LTCFs, ALFs, CBRFs, and/or facilities caring for patients who are elderly and/or have chronic medical

conditions that place them at high risk of severe complications from COVID-19, including COUNTRY VILLA PULASKI, implement actions in accordance with Wis. Stat. Chapter 252, Wis. Admin. Code Chapter DHS 145, Chapter 50, and Centers for Medicare & Medicaid Services (CMS) guidance, including, but not limited to:

    a. Restrict visitation of all visitors and non-essential health care personnel, except for certain compassionate care situations, such as an end-of-life situation, based on guidance from CMS;

    b. Cancel communal dining and all group activities, such as internal and external group activities;

    c. Implement active screening of residents and staff for fever, respiratory, and/or COVID-19 symptoms;

    d. Remind residents to practice social distancing and perform frequent hand hygiene;

    e. Screen all staff at the beginning of their shift for fever and respiratory symptoms. Actively take their temperature and document presence or absence of shortness of breath, new or change in cough, and sore throat. If employees develop signs and symptoms of a respiratory infection while on the job they should: immediately stop work, put on a facemask, and self-isolate at home; inform the facility's infection preventionist; and contact their local health department for next steps;

    f. Immediately contact the local public health department to receive further guidance on infection control when a healthcare worker or resident of a facility is diagnosed with COVID-19;

    g. Identify staff who work at multiple facilities (e.g., agency staff, regional or corporate staff, etc.) and actively screen and restrict them appropriately to ensure they do not place individuals in the facility at risk for COVID-19;

    h. Review and revise interactions with vendors and delivery drivers, agency staff, EMS personnel and equipment, transportation providers, and other non-health care providers, and take necessary actions to prevent any potential transmission; and/or

    i. Advise visitors, and any individuals who entered the facility (e.g., hospice staff), to monitor for signs and symptoms of respiratory infection for at least 14 days after exiting the facility. If symptoms

occur, advise them to self-isolate at home, contact their healthcare provider, and immediately notify the facility of the date they were in the facility, the individuals they were in contact with, and the locations within the facility where they visited. Facilities should immediately screen the individuals of reported contact, and take all necessary actions based on their findings.

31.    Upon further information and belief, in addition, the State of Wisconsin DHS issued a memo on or around March 20, 2020, with information, guidance, recommendations, reasonable efforts and/or actions, and/or resources on Personal Protective Equipment (PPE) from the Strategic National Stockpile (SNS), which instructed facilities to follow strategies to optimize the supply of PPE in accordance with new guidance from the Centers for Disease Control and Prevention (CDC), including, but not limited to, ensuring all possible engineering and administrative controls are implemented to reduce infectious disease transmission, such as isolation in airborne infection isolation rooms, use of physical barriers, properly maintaining ventilation systems, excluding all healthcare personnel from patient care areas who are not directly involved in patient care, limiting face-to-face encounters of healthcare personnel with patients, restricting visitors, source control, cohorting patients and healthcare personnel, maximizing use of telemedicine, and/or other measures, such as understanding the facilities current PPE inventory, supply chain, utilization rate, and community PPE supply to know whether the facility is operating under conventional capacity, contingency capacity, or crisis capacity.

32.    Despite this advance notice and knowledge, DEFENDANTS failed to institute, develop, and/or implement an appropriate and/or necessary COVID-19 Emergency Plan, Infection Control Program, and/or facility, administrative, personnel, staffing, and/or resident plans, policies, procedures, protocols, guidelines, and/or

14

services to keep its residents healthy and safe, optimize PPE, and/or implement adequate engineering and administrative controls to reduce infectious disease transmission, to ensure the residents of COUNTRY VILLA PULASKI, including NORBERT, received adequate, appropriate, and/or safe care, treatment and/or services consistent with Federal, State, and/or local public health laws, regulations, codes, rules, guidance, and/or recommendations, current industry standards, and/or within the accepted standards of care during the state of emergency relating to public health existing in the State of Wisconsin to prevent the introduction and/or spread of COVID-19 at COUNTRY VILLA PULASKI and/or to prevent the development and/or transmission of COVID-19, communicable disease, and/or infection among the residents of COUNTRY VILLA PULASKI, including NORBERT, who were known to have an increased risk of severe illness, severe complications, and/or death from COVID-19.

33.    At all times material, DEFENDANTS had a duty to educate, train, orient and teach management, supervisors and staff to provide care, assistance, and services to COUNTRY VILLA PULASKI'S residents according to their needs and meet the standard of care, current industry standards, and/or Federal, State, and/or local public health laws, regulations, codes, rules, guidance, and/or recommendations, including protecting COUNTRY VILLA PULASKI'S residents from the threat of COVID-19, communicable disease, infection, and/or serious harm.

34.    At all times material, it was the duty and responsibility of DEFENDANTS' management, supervisors, employees, representatives, consultants, agents, ostensible agents, officers, and/or servants to act reasonably to prevent the residents of COUNTRY VILLA PULASKI, including NORBERT, from harm.

15

35.     At all times material, DEFENDANTS chose not to provide adequate training for their management, supervisors, employees, representatives, consultants, agents, ostensible agents, officers, and/or servants regarding their reasonable duty of care to protect residents, including NORBERT, from harm.

36.     Upon information and belief, at all times material, DEFENDANTS knew or should have known that COUNTRY VILLA PULASKI needed adequate and competent staff to ensure that the health, safety, and welfare of the residents of COUNTRY VILLA PULASKI, including NORBERT, were protected, to ensure that residents of COUNTRY VILLA PULASKI, including NORBERT, received appropriate care and services, to identify circumstances which could be harmful or dangerous to the health, safety, or welfare its residents, and/or to protect and keep its residents, including NORBERT, safe.

37.     At all times material, DEFENDANTS failed to provide sufficient numbers of qualified staff and/or personnel to meet the total needs of the residents of COUNTRY VILLA PULASKI, including NORBERT, and/or failed to provide NORBERT with the adequate and competent staff necessary to protect him from harm, to assure his safety, to provide and/or arrange services adequate to meet the needs of NORBERT, increase or maintain his independence, and/or to help attain/maintain his highest practicable level of well-being, to properly analyze and/or evaluate NORBERT'S risks and/or environmental hazards and/or implement interventions to reduce known danger to NORBERT, including proper protection from COVID-19 communicable disease, infection, and/or serious harm, to protect NORBERT'S right to be free from mistreatment, abuse, and/or neglect, to develop and/or enact proper policies,

16

procedures, guidelines, protocols, and/or safety precautions to prevent infection and/or provide proper protection from COVID-19, to properly notify and/or consult with NORBERT'S physician, legal representative, and/or family when there was a significant change in his health condition, a need to alter treatment, and/or a need to commence a new form of treatment, to not permit the existence or continuation of a condition which created a substantial risk to the health, safety and welfare of NORBERT and/or which had the potential to affect NORBERT'S quality of life, to protect and/or prevent NORBERT from harm, injuries, communicable disease, infection, COVID-19, and/or COVID-19 related injuries and/or medical conditions while he was a resident of COUNTRY VILLA PULASKI.

38.     Upon information and belief, and prior to NORBERT acquiring COVID-19, DEFENDANTS failed to cease communal dining and group activities at COUNTRY VILLA PULASKI, such as internal and external group activities, as a measure to reduce the spread of the disease as advised by the CDC and/or State of Wisconsin DHS.

39.     Upon information and belief, prior to NORBERT acquiring COVID-19, DEFENDANTS held gatherings, group activities, and/or communal dining at COUNTRY VILLA PULASKI for individuals including, but not limited to, the residents of COUNTRY VILLA PULASKI and/or DEFENDANTS' staff, which brought them together in a single room and/or confined or enclosed space at the same time without preserving social distancing of 6 feet between people, without proper infection, engineering, and/or administrative controls, facemasks, and/or PPE to reduce infectious disease transmission, and/or without following other public health recommendations issued by the CDC and/or State of Wisconsin DHS, industry standards, and/or Federal, State,

17

and/or local public health laws, regulations, codes, rules, guidance, and/or recommendations.

40.     Upon information and belief, at all times material, DEFENDANTS failed to implement an infection and symptom tracking system, COVID-19 Emergency Plan, Infection Control Program, and/or other policies, procedures, protocols, plans, guidelines, and/or services to monitor DEFENDANTS' staff and/or COUNTRY VILLA PULASKI residents, including NORBERT, for COVID-19 symptoms and/or monitor the development of COVID-19 among residents and/or staff at COUNTRY VILLA PULASKI.

41.     Upon information and belief, at all times material, DEFENDANTS failed to implement active screening of DEFENDANTS' staff and/or COUNTRY VILLA PULASKI'S residents, including NORBERT, for fever and/or COVID-19 symptoms, and/or failed to actively take temperatures, adequately monitor resident health and/or vital signs, report significant resident deviations as required to appropriate physician(s) and/or health care providers, make necessary arrangements for necessary health services, document physician communication, and/or document, assess, and/or address changes in resident condition, health and/or mental health status, weight, food and/or fluid intake patterns, vital signs, and/or the presence or absence of COVID-19 symptoms including, but not limited to, shortness of breath, new or change in cough, sore throat, runny nose, muscle pain, headache, fever, chills, and/or loss of taste or smell.

42.     Upon information and belief, at all times material, DEFENDANTS failed to recognize symptoms and/or combinations of symptoms exhibited by DEFENDANTS' staff and/or the residents of COUNTRY VILLA PULASKI, including NORBERT, as

potentially associated with COVID-19 and/or failed to provide or arrange for services adequate to meet the needs the residents of COUNTRY VILLA PULASKI, including NORBERT.

43.     Upon information and belief, at all times material, DEFENDANTS did not attain or maintain sufficient numbers of qualified staff, personnel, and/or caregivers to provide or arrange for services adequate to meet the needs of the residents of COUNTRY VILLA PULASKI, including NORBERT, to ensure the COUNTRY VILLA PULASKI and its operation complied with all laws governing the CBRF, and/or to respond to the needs and/or declining health of the residents of COUNTRY VILLA PULASKI, including NORBERT, during a Coronavirus (COVID-19) outbreak at COUNTRY VILLA PULASKI.

44.     Upon information and belief, at all times material, as a result of the short staffing, DEFENDANTS failed to cohort its residents and staff members, failed to dedicate specific staff members to the residents of COUNTRY VILLA PULASKI that were positive and/or symptomatic for COVID-19, and/or limit close contact encounters between its resident and staff to reduce infectious disease transmission. Rather, DEFENDANTS' staff were required to provided care, treatment, and services to both the COVID-19 positive and/or symptomatic residents at COUNTRY VILLA PULASKI, as well as the COVID-19 negative and/or asymptomatic residents at COUNTRY VILLA PULASKI, which resulted in an increased spread of COVID-19 throughout COUNTRY VILLA PULASKI.

45.     Upon information and belief, at all times material, although several staff members of COUNTRY VILLA PULASKI exhibited signs and symptoms of COVID-19,

were awaiting COVID-19 test results, and/or were positive for COVID-19, DEFENDANTS required those staff members to continue to work at COUNTRY VILLA PULASKI, asked those staff members to stay on shift, and/or failed to ensure DEFENDANTS' staff exhibiting signs and symptoms of COVID-19, awaiting COVID-19 test results, and/or positive for COVID-19 immediately stopped working at COUNTRY VILLA PULASKI, utilized proper PPE, self-isolated at home, contacted the local health department for guidance, and/or followed public health recommendations.

46.    Upon information and belief, at all times material, DEFENDANTS failed to ensure PPE was available immediately outside of resident rooms and/or in other areas at COUNTRY VILLA PULASKI, failed to utilize, provide, ensure, and/or obtain a sufficient supply of PPE, facemasks, gowns, gloves and/or eye protection for COUNTRY VILLA PULASKI, failed to adequately monitor COUNTRY VILLA PULASKI'S PPE inventory, supply chain, utilization rate, and/or PPE supply, failed to obtain and/or request PPE inventory from the National Strategic Stockpile, pharmacies, suppliers, and/or by contacting DEFENDANTS' other locations, as needed, and/or failed to develop, implement, and/or arrange for necessary, adequate, and/or safe PPE practices and/or engineering, administrative, and/or PPE measures and/or controls to reduce infectious disease transmission including, but not limited to, isolation in airborne infection isolation rooms, use of physical barriers, properly maintaining ventilation systems, excluding all healthcare personnel from patient care areas who are not directly involved in patient care, limiting face-to-face encounters of healthcare personnel with patients, restricting visitors, source control, cohorting residents and staff, maximizing use of telemedicine, and/or other measures.

47.    Upon information and belief, at all times material, DEFENDANTS' staff used the same PPE, facemasks, gowns, gloves and/or eye protection for repeated close contact encounters between COVID-19 positive and COVID-19 negative residents of COUNTRY VILLA PULASKI, without removing the PPE between resident encounters, and DEFENDANTS' staff shared powered air-purifying respirators and/or PAPRs with other staff members and/or between shifts, without proper procedures in place for sanitizing, changing filters and/or changing batteries.

48.    Upon information and belief, prior to NORBERT acquiring COVID-19, even when residents of COUNTRY VILLA PULASKI who had tested positive for COVID-19 were quarantined in their rooms, COUNTRY VILLA PULASKI continued to use the same HVAC system for quarantined and non-quarantined residents and/or failed to properly maintain all possible engineering controls to reduce the threat of COVID-19 including, but not limited to, maintaining COUNTRY VILLA PULASKI'S ventilation systems.

49.    Upon information and belief, as a direct result of the DEFENDANTS' actions and omissions, from on or around April 27, 2020 through May 12, 2020, approximately 28 out of the 36 residents at COUNTRY VILLA PULASKI tested positive for COVID-19 and approximately 18 out of the 27 staff members of COUNTRY VILLA PULASKI tested positive for COVID-19.

50.    Upon information and belief, NORBERT was tested for COVID-19 on or around April 28, 2020 and was diagnosed with and/or confirmed to be positive for COVID-19 on or around April 30, 2020.

21

51.    Upon information and belief, on or around May 3, 2020, NORBERT was transferred from COUNTRY VILLA PULASKI to the hospital by ambulance, where he was admitted, evaluated, treated, and/or diagnosed with severe injuries and/or medical conditions including, but not limited to, COVID-19 and/or COVID-19 pneumonia.

52.    As a direct result of the DEFENDANTS' actions and omissions, and as a direct result of the injuries and/or medical conditions that NORBERT suffered while he was in the care of the DEFENDANTS and/or thereafter, NORBERT required hospitalization and/or extensive treatment, and/or suffered a loss of dignity, severe pain, suffering, mental anguish, and/or emotional distress, a decline in his activities of daily living, communicative and/or cognitive abilities, and/or overall health, and/or and deteriorated causing his death on May 15, 2020.

53.    NORBERT died on or around May 15, 2020, as a direct result of rampant COVID-19 outbreak at COUNTRY VILLA PULASKI, and/or as a direct result of injuries, harm, COVID-19 infection, COVID-19 pneumonia, and/or COVID-19 related injuries and/or medical conditions that NORBERT suffered while he was in the care of the DEFENDANTS and/or thereafter.

**FIRST CAUSE OF ACTION – NEGLIGENCE**

54.    PLAINTIFFS reallege and incorporate herein paragraphs 1 through 53 above.

55.    DEFENDANTS owed a duty to their residents, including NORBERT, to provide care, treatment and services within accepted standards of care of community based residential facilities.

56.     DEFENDANTS owed a duty to exercise ordinary care and act as a reasonable and prudent community based residential facility would under the same or similar circumstances, including, but not limited to, ensuring the safety of NORBERT. DEFENDANTS breached that duty and were negligent. DEFENDANTS' negligence was the sole proximate cause and/or a proximate cause of NORBERT'S injuries and death. DEFENDANTS' negligence includes, but is not limited to, the following:

a. Failing to prevent the development and/or transmission of COVID-19, communicable disease, and/or infection;

b. Failing to provide or arrange for services adequate to meet the needs the residents of COUNTRY VILLA PULASKI, including NORBERT, ensure that the residents of COUNTRY VILLA PULASKI, including NORBERT, received prompt and adequate treatment, care, and/or services appropriate to their needs, risks, changes in condition, and/or threats related to COVID-19,

c. Failing to develop, update, implement, and comply with comprehensive ISP and/or Plan of Care to meet NORBERT'S needs, properly assess and/or address NORBERT'S needs, risks, health condition, changes in condition, and/or threats related to COVID-19, and/or develop, update, and/or implement appropriate and necessary interventions to reduce NORBERT'S ricks and/or known dangers to NORBERT, including proper protection from COVID-19;

d. Failing to ensure that NORBERT'S rights, health, safety, and/or welfare was protected, protect and/or promote NORBERT'S safety, safeguard NORBERT from harm, maintain a safe, comfortable, and/or protective environment for NORBERT, and/or prevent NORBERT from harm, injuries, communicable disease, infection, COVID-19, and/or COVID-19 related injuries and/or medical conditions while he was a resident of COUNTRY VILLA PULASKI;

e. Failing to institute, develop, and/or implement adequate and/or necessary COVID-19 Emergency Plans, Infection Control Programs, COVID-19 Preparedness, Response, and/or Control Plans, and/or other facility, administrative, engineering, PPE, personnel, staffing, and/or resident care plans, policies, procedures, protocols, guidelines, precautions, and/or to keep its residents healthy and safe, provide proper protection from COVID-19, and/or monitor and/or prevent the

development and/or transmission of COVID-19, communicable disease and/or infection during the novel Coronavirus (COVID-19) outbreak;

f.  Failing to monitor federal, state, and/or local public health communications about COVID-19 regulations, guidance, and/or recommendations and/or ensure that COUNTRY VILLA PULASKI and its operation and/or staff implemented and/or complied with all laws governing the CBRF, public health guidance issued by the CDC, CMS, and/or State of Wisconsin DHS, the standards of care and/or current industry standards, and/or Federal, State, and/or local public health laws, regulations, codes, rules, guidance, and/or recommendations;

g.  Failing to cease communal dining and group activities at COUNTRY VILLA PULASKI, such as internal and external group activities, as a measure to reduce the spread of COVID-19 at COUNTRY VILLA PULASKI as advised by the CDC and/or State of Wisconsin DHS and/or failing to preserve social distancing of 6 feet between people, follow public health guidance, and/or implement proper infection, engineering, and/or administrative controls, facemasks, and/or PPE to reduce infectious disease transmission during gatherings at COUNTRY VILLA PULASKI, which brought the residents of COUNTRY VILLA PULASKI, DEFENDANTS' staff, and/or other individuals together in a single room and/or confined or enclosed space at the same time;

h.  Failing to implement active screening of DEFENDANTS' staff and/or COUNTRY VILLA PULASKI'S residents, including NORBERT, for fever and/or COVID-19 symptoms, actively take temperatures, adequately monitor resident health and/or vital signs, report significant deviations as required to appropriate physician(s) and/or health care provider(s), arrange for necessary health services, and/or document physician communication, changes in resident condition and/or health status, resident vital signs, and/or the presence or absence of COVID-19 symptoms exhibited by DEFENDANTS' staff and/or COUNTRY VILLA PULASKI'S residents including, but not limited to, shortness of breath, new or change in cough, sore throat, runny nose, muscle pain, headache, fever, chills, and/or loss of taste or smell;

i.  Failing to ensure DEFENDANTS' staff members that were exhibiting signs and symptoms of COVID-19, awaiting COVID-19 test results, and/or positive for COVID-19 immediately stopped working at COUNTRY VILLA PULASKI, utilized proper PPE, self-isolated at home, contacted the local health department for guidance, and/or followed public health recommendations, and/or failing to protect the COUNTRY VILLA PULASKI residents, including NORBERT, from staff members of COUNTRY VILLA PULASKI and/or other individuals who

were exhibiting signs and symptoms of COVID-19, awaiting COVID-19 test results, and/or positive for COVID-19;

j.   Failing to properly assess DEFENDANTS' staff and/or the residents of COUNTRY VILLA PULASKI, including NORBERT, failing to develop, and/or implement an infection and symptom tracking systems at COUNTRY VILLA PULASKI, failing to adequately evaluate, manage, and/or address the residents and/or staff of COUNTRY VILLA PULASKI with COVID-19 and/or symptoms of COVID-19, failing to internally review development of COVID-19 among the residents and/or staff of COUNTRY VILLA PULASKI, and/or failing to recognize symptoms and/or combinations of symptoms exhibited by DEFENDANTS' staff and/or the residents of COUNTRY VILLA PULASKI, including NORBERT, as potentially associated with COVID-19;

k.   Failing to utilize, provide, ensure, and/or obtain a sufficient supply of PPE, facemasks, gowns, gloves and/or eye protection for COUNTRY VILLA PULASKI, ensure adequate and/or necessary ensure PPE was available immediately outside of resident rooms and/or in other areas at COUNTRY VILLA PULASKI, adequately monitor COUNTRY VILLA PULASKI'S PPE inventory, supply chain, utilization rate, and/or PPE supply, and/or obtain and/or request PPE inventory from the National Strategic Stockpile, pharmacies, suppliers, and/or by contacting DEFENDANTS' other locations, as needed;

l.   Failing to develop, implement, and/or arrange for necessary, adequate, and/or safe strategies to optimize PPE, PPE practices, and/or other engineering, administrative, staffing, and/or PPE measures and/or controls to prevent the spread of COVID-19 and/or reduce infectious disease transmission at COUNTRY VILLA PULASKI including, but not limited to, isolation in airborne infection isolation rooms, use of physical barriers, properly maintaining ventilation systems, excluding all healthcare personnel from patient care areas who are not directly involved in patient care, limiting face-to-face encounters of healthcare personnel with patients, restricting visitors, source control, cohorting residents and staff, maximizing use of telemedicine, and/or other measures;

m.  Failing to provide a safe environment and ventilation, including proper protection from COVID-19, for the residents of COUNTRY VILLA PULASKI, including NORBERT;

n.   Failing to adequately hire, retain, and/or provide a sufficient number of competent and qualified personnel in said facility and/or provide personnel sufficient in numbers to ensure the residents of COUNTRY

VILLA PULASKI, including NORBERT, attained and maintained their highest level of physical, mental and psychosocial well-being;

o. Failing to properly educate, train, orient and teach DEFENDANTS' management, supervisors and/or staff to provide safe, adequate, and/or appropriate care, assistance, and services to the residents of COUNTRY VILLA PULASKI, including NORBERT, according to their needs and meet the standard of care, current industry standards, and/or Federal, State, and/or local public health laws, regulations, codes, rules, guidance, and/or recommendations, including protecting COUNTRY VILLA PULASKI'S residents from the threat of COVID-19, communicable disease, infection, and/or serious harm;

p. Failing to comply with Federal, State, and/or local public health laws, regulations, codes, rules, guidance, and/or recommendations, including but not limited to Wis. Stat. Chapter 252, Wis. Admin. Code Chapter DHS 145, Chapter DHS 83, Chapter 50, and/or the guidance issued by Centers for Medicare & Medicaid Services (CMS), CDC, and/or State of Wisconsin DHS;

q. Failing to otherwise follow the current industry standards and/or appropriate standards of care; and/or

r. In other ways to be discovered.

57. Upon information and belief, DEFENDANTS, through its employees, representatives, consultants, agents, ostensible agents, and/or servants, chose not to provide necessary care, assessments, planning, supervision, monitoring, management, documentation, administration, assistance, care and treatment to NORBERT.

58. DEFENDANTS, through their employees, representatives, consultants, agents, ostensible agents, and/or servants engaged in a continuum and pattern of negligent care, assessment, documentation, planning, supervision, management, administration, assistance, care, and/or treatment of NORBERT during the period of his residency at COUNTRY VILLA PULASKI, within the course and scope of their employment and agency, and in furtherance of the DEFENDANTS' business.

26

59.    DEFENDANTS' continuum and/or pattern of negligence of their employees, representatives, consultants, agents, ostensible agents, and/or servants were a substantial factor in causing the rampant COVID-19 outbreak at COUNTRY VILLA PULASKI, NORBERT'S condition upon transfer to the hospital on or around May 3, 2020 and thereafter, and/or the severe injuries, medical conditions, and/or harm  that NORBERT suffered while he was in the care of the DEFENDANTS and/or thereafter including, but not limited to, NORBERT'S COVID-19 infection, COVID-19 pneumonia, COVID-19 related injuries and/or medical conditions, loss of dignity, decline in activities of daily living and/or overall health, severe pain, suffering, disability, and/or emotional distress, and/or wrongful death.

60.    At all times material, DEFENDANTS operated and managed COUNTRY VILLA PULASKI so as to maximize profits by reducing staffing levels below that needed to provide necessary care to residents, including NORBERT. DEFENDANTS intentionally and/or with reckless disregard for the rights of its residents and NORBERT caused staffing levels at COUNTRY VILLA PULASKI to be set so that the personnel on duty at any given time could not meet the needs of residents.

61.    Prior to and during NORBERT'S residency, DEFENDANTS were aware, had knowledge of and were notified that DEFENDANTS engaged in a pattern of negligent, inadequate and substandard management, administration and care, including but not limited to, infection and/or injury prevention, resident safety, resident monitoring, resident assessment, and/or care planning.

62.    DEFENDANTS owed a duty to their residents, including NORBERT, to hire, train, and supervise employees, representatives, consultants, agents, ostensible

27

agents, and/or servants to deliver care and services to residents in a safe and appropriate manner.

63.    DEFENDANTS are subject to liability for harm to persons, such as, for DEFENDANTS' failure to exercise reasonable care to employ competent and careful employees, representatives, consultants, agents, ostensible agents, and/or servants.

64.    DEFENDANTS breached their duty to select, retain, and/or supervise such employees, representatives, consultants, agents, ostensible agents, and/or servants and/or were negligent in their selection of employees, representatives, consultants, agents, ostensible agents, and/or servants to work at DEFENDANTS' facility - COUNTRY VILLA PULASKI. DEFENDANTS' negligence was the sole proximate cause and/or a proximate cause of NORBERT'S death. DEFENDANTS' negligence includes, but is not limited to:

   a. Failing to select, hire, and/or retain employees, representatives, consultants, agents, ostensible agents, and/or servants who could skillfully and carefully perform work involving risk of COVID-19 and/or develop and/or implement an infection control program based on current standards of practice to prevent the development and/or transmission of communicable disease and infection during the novel Coronavirus (COVID-19) outbreak;

   b. Failing to select, hire, retain, and/or provide a sufficient number of personnel to respond to residents' needs and/or their declining health during a Coronavirus (COVID-19) outbreak at COUNTRY VILLA PULASKI and/or provide competent and qualified personnel sufficient in numbers to ensure the residents of COUNTRY VILLA PULASKI, including NORBERT, attained and maintained their highest level of physical, mental and psychosocial well-being;

   c. Failing to monitor, manage, communicate, and/or train employees, representatives, consultants, agents, ostensible agents, and/or servants to provide safe, adequate, and/or appropriate care, assistance, and services to the residents of COUNTRY VILLA PULASKI, including NORBERT, according to their needs and meet the standard of care, current industry standards, and/or Federal, State, and/or local public health laws, regulations, codes, rules, guidance,

and/or recommendations, including protecting COUNTRY VILLA
PULASKI'S residents from the threat of COVID-19, communicable
disease, infection, and/or serious harm;

d. Failing to select employees, representatives, consultants, agents,
ostensible agents, and/or servants who could properly perform any
duty, which an employer owes to third persons;

e. Failing to ensure that employees, representatives, consultants, agents,
ostensible agents, and/or servants were properly trained;

f. Failing to supervise such employees, representatives, consultants,
agents, ostensible agents, and/or servants; and/or

g. In other ways to be discovered.

65. During the time of NORBERT'S residence at COUNTRY VILLA PULASKI,
DEFENDANTS became aware, or should have become aware, of problems and/or
conduct that indicated unfitness of such employees and/or agents. DEFENDANTS
failed to take further action to investigate, discharge, and/or reassign such employee
and/or agents and PLAINTIFFS damages were caused by DEFENDANTS' negligent
hiring, retention, and/or supervision of such employees and/or agents.

66. DEFENDANTS had a duty to select employees/agents that performed
work with due diligence, in a good manner, using competent and experienced
employees/agents in accordance with recognized industry practices, and that would
comply with all applicable rules and regulations and standards of DEFENDANTS
concerning safety, security, and well-being of persons and property. DEFENDANTS
breached this duty in selecting employees/ agents that were unfit.

67. DEFENDANTS retained employees/agents who failed to conduct work in
accordance with industry practices and that would comply with all applicable rules and

regulations and standards of DEFENDANTS concerning safety, security, and well-being of persons and/or property.

68.    DEFENDANTS knew, or should have known, that the employees/agents failed to work in accordance with industry practices, and that they would not comply with all applicable rules and regulations and standards of DEFENDANTS concerning safety, security, and well-being of persons and/or property. Additionally, DEFENDANTS failed to supervise the conduct and/or work being performed by employees/ agents who were incompetent and failed to conduct work in accordance with recognized industry practice.

69.    DEFENDANTS, through its employees, representatives, consultants, agents, ostensible agents, directors, officers and servants, violated the regulations that establish the minimum standard of care to be followed by Community Based Residential Facilities. These regulations were enacted to protect residents such as NORBERT.

70.    DEFENDANTS, by violating these state rules and regulations, breached a duty of care owed to NORBERT, who was a member of the class of citizens these rules and regulations were intended and enacted to protect and as a direct result caused NORBERT a  loss of dignity, a decline in activities of daily living and/or overall health, severe injuries, medical conditions, pain, suffering, mental anguish, emotional distress, and/or disability, and/or a wrongful death on May 15, 2020.

71.    At all times material, DEFENDANTS were subject to licensing and regulatory statutes, administrative code and rules of the State of Wisconsin.

72.    At all times material, DEFENDANTS were subject to the provisions of Wis. Stat. § 50.09, entitled, "Rights of residents in certain facilities," Chapter DHS 83 – "Community Based Residential Facilities", Chapter DHS 145 – "Control Of

Communicable Diseases", and/or Wis. Stat. § 252, entitled, "Communicable Diseases". These laws were enacted to protect CBRF residents such as NORBERT.

73.    DEFENDANTS failed to provide NORBERT with a safe and convenient living environment in violation of Chapter 50 of the Wisconsin statutes.

74.    DEFENDANTS violated NORBERT'S rights, including but not limited to the right to be treated at all times with courtesy, respect, and full recognition of his dignity and individuality, all in violation of Chapter 50 and/or DHS 83.

75.    Upon information and belief, DEFENDANTS failed to provide treatment, services and care, and other ancillary services to NORBERT, in violation of Wisconsin statutes, codes, and regulations.

76.    DEFENDANTS' continuum and/or pattern of negligence of its employees, representatives, consultants, agents and/or servants and its violation of Wisconsin laws, rules and regulations, and codes was/were a substantial factor in causing NORBERT'S rights to be violated and NORBERT'S loss of dignity, decline in activities of daily living and/or overall health, his severe injuries and/or medical conditions, pain, suffering, disability, and/or emotional distress, and/or his wrongful death on May 15, 2020.

77.    The acts and/or omissions of DEFENDANTS and/or its employees, representatives, consultants, agents, ostensible agents, servants, directors, and officers were a substantial factor in causing the harm and damages suffered by the PLAINTIFFS.

78.    As a direct and proximate result of DEFENDANTS' acts, omissions, and statutory, regulatory and code violations, NORBERT'S rights were violated, and NORBERT suffered a loss of dignity, a decline in activities of daily living and/or overall

health, severe injuries and/or medical conditions, pain, suffering, disability, mental anguish, and/or emotional distress, and a wrongful death on May 15, 2020.

79.    As a direct and proximate result of the DEFENDANTS' acts, omissions and/or statutory, regulatory, standard, and/or code violations, the PLAINTIFFS incurred funeral expenses, medical expenses, out of pocket expenses, the loss of society and companionship of NORBERT, and/or damages pursuant to Wis. Stat. §895.04.

### SECOND CAUSE OF ACTION – PUNITIVE DAMAGES

80.    PLAINTIFFS realleges and incorporates herein paragraphs 1 through 79.

81.    DEFENDANTS' conduct was malicious and/or in conscious indifference and/or in intentional disregard of the rights of NORBERT, and others similarly situated, and performed willfully, wantonly, and with disregard and/or conscious indifference of NORBERT'S rights.

82.    Such conduct was undertaken by DEFENDANTS without regard to the health and safety consequences to those residents, such as NORBERT, entrusted to their care. Moreover, such conduct evidences such little regard for their duties of care, good faith and fidelity owed to NORBERT as to raise a reasonable belief that the acts and omissions set forth above are the result of conscious indifference to NORBERT'S rights and welfare.

83.    As a result of DEFENDANTS' acts, omissions, statutory, regulatory, standard, and/or code violations, and punitive conduct, NORBERT suffered a loss of dignity, severe injuries and/or medical conditions, pain, suffering, disability, mental anguish, and/or emotional distress, and a wrongful death on May 15, 2020.

84.     As a result of DEFENDANTS' acts, omissions, statutory, regulatory, standard, and/or code violations, and punitive conduct, the PLAINTIFFS incurred medical expenses, funeral expenses, out-of-pocket expenses, and the loss of society and companionship of NORBERT, and/or damages pursuant to Wis. Stat. § 895.04.

**WHEREFORE**, PLAINTIFFS demands judgment against the DEFENDANTS jointly and severally, as follows:

1.     For compensatory damages on behalf of PLAINTIFFS, in an amount to be determined by a jury;

2.     For punitive damages, in an amount to be determined by a jury;

3.     For a hearing on any alleged subrogation interest due NETWORK HEALTH INSURANCE CORPORATION;

4.     For all statutory fees, interest, costs and disbursements; and

5.     For other such relief as the Court may deem just and equitable.

**PLAINTIFFS HEREBY REQUEST A TWELVE PERSON JURY TRIAL**

Dated at Milwaukee, Wisconsin this 8th day of February 2022.

PITMAN, KALKHOFF, SICULA & DENTICE, S.C.
Attorneys for Plaintiffs
Electronically signed by:

Katherine E. Metzger
State Bar No.: 1099836
kate@pksd.com

OFFICE ADDRESS:
1110 N. Old World Third Street
Suite 320
Milwaukee, WI  53203
(414) 333-3333

FILED
07-30-2020
Register in Probate
Oconto County WI
2020PR000015

**BY THE COURT:**

**DATE SIGNED: July 30, 2020**

Electronically signed by Peggy Miller
Register in Probate



---

**STATE OF WISCONSIN, CIRCUIT COURT, <u>OCONTO</u>                              COUNTY**

IN THE MATTER OF THE ESTATE OF                              ☐ Amended

<u>NORBERT MARKS</u>                              **Letters of Special Administration**
Name                                                          **(Formal Administration)**

DOB:  1/17/1931      DOD:  5/15/2020                    Case No. _____

To:    <u>Cathy Delveaux</u>
       <u>8827 Schroeder Road</u>
       <u>Oconto Falls, WI 54154</u>

The decedent, with date of birth <u>1/17/1931</u>                    and date of death <u>5/15/2020</u>                ,
was domiciled in <u>Oconto</u>                              County, State of <u>Wisconsin</u>                    .

You are granted
   ☒  only these specific powers: <u>All authority necessary to pursue a cause of action regarding injuries and death of decedent,</u>
       <u>including but not limited to obtaining medical records including issuing subpoenas for records.</u>

   ☐  all the same powers, duties and liabilities as a personal representative.
       ☐ Except: _____

Other: _____

**(COURT SEAL)**

| Form completed by:  (Name) |
| Katherine E. Metzger |
| Address |
| 1110 N. Old World 3rd St. Suite 320 |
| Milwaukee, WI  53203 |

| Telephone Number | Bar Number |
|---|---|
| 414-212-0000 | 1099836 |

**EXHIBIT**
**1**

PR-1853, 10/10 Letter of Special Administration (Formal Administration)          §§867.15, 867.17, and 879.57, Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.

Case 1.21-cv-00405-WCG    Filed 03/30/22    Page 37 of 39    Document 1-2

FILED
07-30-2020
Register in Probate
Oconto County WI
2020PR000015

DATE SIGNED: July 30, 2020

Electronically signed by Peggy Miller
Register in Probate

---

**STATE OF WISCONSIN, CIRCUIT COURT, <u>OCONTO</u>    COUNTY**

IN THE MATTER OF THE ESTATE OF

<u>NORBERT MARKS</u>
Name

DOB: 1/17/1931    DOD: 5/15/2020

☐ Amended

**Order for Special Administration
(Formal Administration)**

Case No. _____

A Petition for Special Administration was filed or the court acts on its own motion.

**THE COURT FINDS:**

1. The decedent, with date of birth <u>1/17/1931</u> and date of death <u>5/15/2020</u> was domiciled in <u>Oconto</u> County, State of <u>Wisconsin</u>, with a mailing address of <u>629 N. Chestnut, Oconto Falls, WI 54154</u>.

2. The court has jurisdiction, is the proper venue and there is a statutory basis for appointment of a special administrator.

3. Notice was
   ☒ given to all persons entitled to notice.
   ☐ waived.
   ☐ deemed unnecessary by the court and the appointment should be made without delay.

☐ 4. Other: _____

**THE COURT ORDERS:**

1. Letters of special administration be issued to <u>Cheryl Delveaux</u>, mailing address <u>8827 Schroeder Road, Oconto Falls, WI 54154</u>.

2. ☐ A signature bond    ☐ A surety bond    in the sum of $ _____ is required.
   ☐ No bond is required.

3. The special administrator is granted
   ☒ A.  only these specific powers and duties: <u>All authority necessary to pursue a cause of action regarding injuries and death of decedent, including but not limited to obtaining medical records and issuing subpoenas for records.</u>
   ☐ B.  *(following a hearing on notice to, or waiver of notice by, all interested parties)* all the same powers, duties and liabilities as a personal representative.
       ☐ Except: _____

☐ 4. Other: _____

**THIS IS A FINAL ORDER FOR THE PURPOSE OF APPEAL IF SIGNED BY A CIRCUIT COURT JUDGE.**

PR-1852, 10/10 Order for Special Administration (Formal Administration)    §§867.07, 865.13, 867.17, 879.05 and 879.57, Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.
Page 1 of 2

Case 1:21-cv-00405-WCG   Filed 03/30/22   Page 38 of 39   Document 1-2

| Form completed by: (Name) |  |
|---|---|
| Katherine E. Metzger |  |
| Address<br>1110 N. Old World 3rd St., Suite 320<br>Milwaukee, WI  53203 |  |
| Telephone Number<br>414-212-0000 | Bar Number<br>1099836 |

PR-1852, 10/10 Order for Special Administration (Formal Administration)          §§867.07, 867.13, 867.17, 879.05 and 879.57, Wisconsin Statutes

This form shall not be modified. It may be supplemented with additional material.

Case 1:22-cv-00405-WCG   Filed 03/30/22   Page 39 of 39   Document 1-2

Page 2 of 2